IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GEORGE MADRID,        )
                      )
        Plaintiff,    )
                      )
v.                    )  No. 09 C 5120
                      )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,   )
                      )
        Defendant.    )

## OPINION AND ORDER

Plaintiff George Madrid applied for Disability Insurance Benefits ("DIB"), alleging he became disabled on December 31, 1995. The parties agree that plaintiff remained insured through March 31, 2001. To qualify for DIB, plaintiff must have been disabled within that time period. Following a hearing, an Administrative Law Judge ("ALJ") found that plaintiff was not disabled. Applying the standard five-step sequential analysis, see 20 C.F.R. § 404.1520, the ALJ found that plaintiff's claim failed at Step Two in that he did not have a severe impairment. The Appeals Council denied review, making the ALJ's decision the

final decision of defendant Commissioner of Social Security. Plaintiff sought review in this court. Presently pending are cross motions for summary judgment seeking a remand or affirmance on administrative review of the Commissioner's decision.

The ALJ's determination is upheld if supported by substantial evidence. *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and his conclusions. We view the record as a whole but do not reweigh the evidence or substitute our judgment for that of the ALJ." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

At Step Two, the burden is on plaintiff to establish that he has an impairment that is severe. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 404.1521(a); *Castile*, 617 F.3d at 926. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b); *Orr v. Astrue*,

2010 WL 4192831 *9 (N.D. Ill. Oct. 18, 2010). "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling 96-3p, 1996 WL 374181 *1. Step Two has been characterized as a *de minimis* screening device that disposes of groundless claims. ***Johnson v. Sullivan***, 922 F.2d 346, 347 (7th Cir. 1990); ***Monhaut v. Astrue***, 2010 WL 2545163 *4 (N.D. Ind. June 17, 2010) (quoting ***Samuel v. Barnhart***, 295 F. Supp. 2d 926, 952 (E.D. Wis. 2003) (quoting ***Smolen v. Chater***, 80 F.3d 1273, 1290 (9th Cir. 1996))); ***Wools v. Astrue***, 2009 WL 1148219 *15 n.3 (S.D. Ind. April 28, 2009) (quoting ***Higgs v. Bowen***, 880 F.2d 860, 863 (6th Cir. 1988)); ***Elkins v. Astrue***, 2009 WL 1124963 *8 (S.D. Ind. April 24, 2009) (citing ***Webb v. Barnhart***, 433 F.3d 683, 688 (9th Cir. 2005)); ***Leonard v. Barnhart***, 2006 WL 3523103 *12 (W.D. Wis. Dec. 4, 2006) (quoting ***Webb***, 433 F.3d at 686-87); ***Salazar v. Barnhart***, 2004 WL 2966919 *5 (N.D. Ill. Nov. 24, 2004). *But compare* ***Boyd v. Astrue***, 2009 WL 5149136 *9 (N.D. Ill. Dec. 28, 2009).

The only issue before this court is whether substantial evidence supports the ALJ's conclusion that plaintiff did not have a severe impairment. Even if the ALJ erred in finding no severe impairment, the Commissioner may still deny the claim at a latter Step of the sequential analysis. Nevertheless, if it is held that it was error to find no severe impairment, this court cannot consider the additional Steps and must instead remand the case to provide the Commissioner with the first

opportunity to consider Step Three and any further Steps. *Johnson v. Heckler*, 741 F.2d 948, 952-53 (7th Cir. 1984); *Carter v. Astrue*, 2007 WL 2804889 *1 (N.D. Ill. Sept. 20, 2007).

Plaintiff's last employment was as a screw machine operator or foreman. A.R. 30. Medical evidence supports that, during the pertinent time period, plaintiff had knee problems, diabetes mellitus, hypertension, and obesity. The ALJ found the first three conditions did not constitute severe impairments and did not expressly address the evidence of obesity. Plaintiff contends the ALJ erred by (a) failing to find that his knee condition was a severe impairment, (b) failing to consider obesity, and (c) improperly rejecting his testimony regarding pain.

As to plaintiff's knee problem[1] not being a severe impairment during the pertinent time period, the ALJ noted:

> [The] treatment was received on an intermittent basis (Exhibit 2F). There is no description in the treatment

---

[1] Plaintiff criticizes the ALJ for stating, contrary to the record, that plaintiff testified that his right knee had more severe problems than his left knee. Compare A.R. 18 (ALJ decision) with A.R. 32 (plaintiff's testimony). This apparently is an inconsequential clerical error. When listing plaintiff's impairments, the ALJ lists "left knee disorder." A.R. 16. When discussing plaintiff's knee problems, the ALJ first discusses the left knee and then mentions there are also problems with the right knee. A.R. 18. As to plaintiff's knees, the ALJ primarily considered the left knee, which was the one causing plaintiff more problems. Similarly, plaintiff complains that the ALJ refers to plaintiff injuring his left knee in September 2004, A.R. 17, instead of in 1994. Again, this is an inconsequential clerical error since the ALJ otherwise focuses on knee treatment that occurred from 1995 through 2001.

>       notes of any significant abnormalities of gait, range
>       of motion, motor strength, sensation or reflexes
>       (Exhibit 2F). No muscle atrophy was noted, and the
>       claimant was not noted to require an assistive device to
>       assist with ambulation (Exhibit 2F). Although the
>       claimant also testified to problems with his right knee,
>       the record contains no imaging studies of his right knee
>       that would reveal any abnormality. . . . [T]here was no
>       description in the treatment notes of any significant
>       abnormalities of right knee range of motion, motor
>       strength, sensation or reflexes (Exhibit 2F).

A.R. 18.

Regarding reports of plaintiff's treating physician, orthopedic surgeon Joseph Thometz, the ALJ rejected his September 1996 letter that plaintiff could not then return to work as being conclusory, indicating no familiarity with Social Security Administration definitions of disability, and lacking support in the treatment notes like those quoted above.[2] A.R. 19. Plaintiff also submitted a

---

[2]The letter is addressed "To whom it may concern" and reads in its entirety: "George Madrid has been under my care for his injury to his left knee. He has been kept off of work while waiting for workman's compensation approval for a G2 knee brace. In my opinion, Mr. Madrid will need to have vocational rehabilitation due to the fact that he will not be able to return to his previous position. If you have any questions, please feel free to contact my office." A.R. 189. This letter, which predates plaintiff's DIB application by almost 10 years, obviously was not written to support an application for DIB, instead appears to have been prepared for submission to plaintiff's employer, and was not intended to be a comprehensive description of plaintiff's then-condition.

physical capacities evaluation form completed by Dr. Thometz and dated May 14, 2008. A.R. 260. On that form, Dr. Thometz checks boxes that plaintiff can perform virtually no physical functions. He checks that plaintiff cannot sit, stand, or walk for any period of time in an eight-hour workday; can never lift or carry even up to five pounds; can do no pushing or pulling of arm controls or fine manipulation; can do no repetitive movements pushing or pulling leg controls with either leg; cannot bend, squat, crawl, climb, or reach at all; and cannot engage in activities involving any unprotected heights, moving machinery, exposure to marked changes in humidity or temperature, driving automotive equipment, or exposure to dust, fumes, or gases. He did check that plaintiff could use his hands for simple grasping. It is not stated whether this description was limited to May 2008 or instead covered some or all of the qualification period. The ALJ rejected the May 2008 evaluation on the ground it was inconsistent with the medical evidence in the record for the pertinent time period; did not identify the time period covered; and was inconsistent with plaintiff's testimony that he could

lift a gallon of milk and operate an automobile's pedals with his right foot.[3] A.R. 19-20.

In rejecting the May 2008 evaluation, the ALJ also relied on the reports of two consulting physicians[4] who did not examine plaintiff, but evaluated the medical records.[5] The ALJ stated the consulting physician reports were consistent with the medical records and inconsistent with Dr. Thometz's May 2008 evaluation. A.R. 20. The ALJ characterized the reports as "opin[ing] that there was insufficient medical documentation to establish a severe impairment prior to the date last insured." *Id.* The entirety of Dr. Philip Pilapil's statement is:

---

[3] The ALJ also stated the May 2008 evaluation was inconsistent with plaintiff's testimony that he could walk for 5-10 minutes an hour and stand for 15-25 minutes. A.R. 20. As plaintiff points out, however, his actual testimony was that he could not walk for 5/10 minutes an hour, instead stating he could only walk for less than 5 minutes at a time and a total of between 15 and 25 minutes in an 8-hour day. He also stated he could only stand for 15-25 minutes total in an 8-hour day. A.R. 45-46.

[4] The A.R. does not contain any documentation of the consulting physicians' credentials nor note their specialties.

[5] Plaintiff contends these reports cannot be relied upon for evaluating the medical evidence because they were prepared before additional medical evidence was added to the record. Pl. Reply at 2. However, the only additional medical evidence that plaintiff cites as being added to the record is Dr. Thometz's May 2008 evaluation. Plaintiff does not point to any medical records from 1995 to 2001 that were added to the record after the consulting physicians' reports were prepared.

> The claimant alleges disability from 12/31/95 w/DLI of 3/31/01. The claimant would have been age 48 at the time he alleges to have 1st become [sic] disabled and age 54 at the time of his DLI.
> Records show that the claimant had a severe sprain in Sept. of 1994 to his left knee. A MRI of that knee (8/95) showed degenerative changes and a torn meniscus. S/P left knee arthroscopy and partial miniscectomy August 1995. Subsequent to this injury the claimant experiences pain and swelling of the left knee. Knee aspirated and injected w/Naprosyn and Lodine. Rx knee brace.
> It would appear that over the time period in question that the symptomology relating to knee was intermittent. There is little documentation relating to the response to treatment or the claimant's ongoing condition such as gait description, ROM or neurovascular status.
> Insufficient medical documentation.

A.R. 252. Dr. Frank Jimenez simply states: "Affirmation of previous Insufficient IRMA prior to DLI of 03/31/01." A.R. 254. Neither report contains any express statement as to the presence or absence of a severe impairment. *See* A.R. 250-55.

The medical records support that plaintiff had a continuing problem with swelling and fluid (effusion) in his left knee that continued for years after the August 1995 surgery on that knee. He also had swelling and fluid in his right knee. Plaintiff repeatedly had fluids drained (aspiration) from both knees, was prescribed two types of braces, had a number of artificial lubricant (synvisc) injections, and medications were continually prescribed, including anti-

inflammatory and pain medication.[6] Defendant does not dispute plaintiff's showing that, between August 31, 1995 and March 31, 2001, plaintiff was treated for knee pain, swelling, and/or fluid on at least 35 different dates. The medical records also support that plaintiff had "cartilage loss through the medial compartment and patellofemoral joint" of his left knee. A.R. 169.

Although Dr. Pilapil also described plaintiff's symptomology as intermittent, the ALJ's finding of an intermittent knee problem is inconsistent with plaintiff having frequent appointments and aspirations and periodic injections of a lubricant over a six-year period of time. In any event, the medical record supports that plaintiff had pain, swelling, and fluid build-up in his knees (particularly the left knee) over the pertinent period of time. Whether this prevented plaintiff from performing his past relevant work or any other work available in the economy is not before this court. The only question is whether there is substantial evidence that this medical impairment on walking, standing, or other physical functions of basic work activities was only minimal. The evidence does not support such a conclusion. The only reasonable conclusion that can be reached is that the medical evidence of plaintiff's knee problems establishes that he satisfies the

---

[6]Naprosyn is a nonsteroidal anti-inflammatory drug ("NSAID") used to treat pain, swelling, and inflammation. Lodine (Etodolac) is also a NSAID. At times prior to March 31, 2001, plaintiff was also prescribed the NSAIDs Oruvail, Relafen, Daypro, and Celebrex, and the narcotic Ultram.

*de minimus* severe impairment requirement, that is, he had a more than minimal limitation on his basic work activities.

The Commissioner argues that the reports of the consulting physicians are a substantial basis for concluding that the medical evidence was insufficient to establish a severe impairment. However, Dr. Pilapil (and Dr. Jimenez) were considering the administrative denial of benefits, not the specific issue of whether the knee impairment is severe. *See* A.R. 250. The conclusory analysis of Dr. Pilapil, which does not specifically address Step Two, is not a basis for finding there is no severe impairment.

The case must be remanded to consider whether plaintiff's knee impairment sufficiently prevented him from performing work such that he qualifies for DIB. Since the case must be remanded on this ground, it is unnecessary to consider whether the ALJ's failure to expressly address obesity or his discounting of plaintiff's testimony as to pain would also be grounds for a remand. When considering additional Steps of the sequential analysis, that evidence must be considered in evaluating plaintiff's knee impairment in light of the entire record including the effect of obesity. *See Castile*, 617 F.3d at 927 (quoting ***Golembiewski v. Barnhart***, 322 F.3d 912, 918 (7th Cir. 2003)).

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment [11] is granted. Defendant's motion for summary judgment [25] is denied. The Clerk of the Court is directed to enter judgment in favor of plaintiff

and against defendant remanding this case to the Commissioner of Social Security for further proceedings.

ENTER:

*William T. Hart*
UNITED STATES DISTRICT JUDGE

DATED: JANUARY 25, 2011